PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL THURSTON, an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FCA US LLC, a Delaware limited liability company; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 5:17-cv-02183 JFW (SPx)<br><br>**[PROPOSED] STATEMENT OF DECISION**<br><br>Date:  January 22, 2018<br>Time: 1:30 P.M.<br>Location:  Courtroom 7A |

1

## **Statement of Decision**

2    Before the Court is Defendant FCA US LLC ("Defendant") Motion to Dismiss

3 Plaintiff Cheryl Thurston's ("Plaintiff") Complaint (the "Motion") (Dkt. No. 24). For the

4 reasons set forth herein, Defendant's Motion is denied.

5

6 ## I.   **LEGAL STANDARD**

7    "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and

8 plain statement of the claim showing that the pleader is entitled to relief.'"   *Ashcroft v.*

9 *Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[T]he pleading

10 standard Rule 8 announces does not require 'detailed factual allegations,' but it demands

11 more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.* at 678.

12 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

13 accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id.*   "A claim has

14 facial plausibility when the plaintiff pleads factual content that allows the court to draw the

15 reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "The

16 plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

17 sheer possibility that a defendant has acted unlawfully."   *Id.*   Rule 8(a) of the Fed. R. Civ.

18 P. "simply calls for enough fact to raise a reasonable expectation that discovery will reveal

19 evidence" to support the allegations.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556,

20 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

21    "[F]or the purposes of a motion to dismiss [courts] must take all of the factual

22 allegations in the complaint as true."   *Iqbal*, 556 U.S. at 678. "All reasonable inferences

23 from the facts alleged are drawn in plaintiff's favor in determining whether the complaint

24 states a valid claim."   The Rutter Group, Federal Civil Procedure Before Trial ¶ 9:213, at

25 9-82 (2011); *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir.

26 2009) ("we must draw inferences in the light most favorable to the plaintiff") (citing

27 *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. 2d. 2d 90 (1974)). "If there

28 are two alternative explanations, one advanced by defendant and the other advanced by

plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." *Id.* "The standard at th[e] [motion to dismiss] stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Iqbal*, 556 U.S. at 681.

### A.   Plaintiff Has Sufficiently Pled An Injury In Fact and Ongoing Deterrence Sufficient to Support Her Request for Injunctive Relief.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The law of Article III standing "require[s] plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (alterations and internal quotation marks omitted). In doing so, the "standing doctrine serves to prevent the judicial process from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138 (2013), thereby ensuring that "the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S. Ct. 1854 (2006) (internal quotation marks omitted). The Supreme Court's cases establish that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992). The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

When an injunction is sought, the moving party must also show a continuing threat of injury. *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693 (2000). To merit injunctive relief, a plaintiff must demonstrate that he

suffers the threat of an "'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142 (2009) (citation omitted).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561; *Young America Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) ("In assessing whether the plaintiff has alleged a sufficiently particularized and concrete injury, the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor.").

"The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 93 S. Ct. 364 (1972)).

A "personal encounter" with an accessibility barrier is not a requirement to establish Article III standing to sue for a cause of action arising under the ADA. *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1100 (9th Cir. 2017) ("we reject [defendant's] invitation to create a bright-line predicate of a 'personal encounter' with a barrier to access as a requirement for standing under ADA Title III."). "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury . . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)

(quoting 42 U.S.C. § 12188(a)(1) (emphasis added).[1] "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137 (emphasis added); *id.* at 1138 ("We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'").

Here, Plaintiff has alleged more than mere knowledge of illegal barriers on Defendant's website – she has alleged several personal encounters, thus establishing past injury. *Id.* at 1137; Cmpl. at ¶¶ 1, 6, 16, 19, 20, 38, 39, 44.

Additionally, Plaintiff has alleged that the barriers that continue to remain on Defendant's website cause ongoing deterrence to Plaintiff and the proposed Class from visiting both Defendant's website and brick and mortar locations. (Cmpl. ¶6). "The ADA plaintiff can show a likelihood of future injury either "when he [or she] intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory barrier" or "when discriminatory architectural barriers deter him [or her] from returning to a noncompliant accommodation." *Brooke v. Capitol Regency LLC*, 2:16-CV-02070-JAM-EFB, 2017 WL 2165866, at *1 (E.D. Cal. May 17, 2017) (quoting *Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)). By alleging ongoing deterrence caused by the accessibility barriers actually experienced by Plaintiff, Plaintiff establishes her intent to return sufficient to satisfy the pleading requirements for standing. (Cmpl. ¶¶ 6, 20).

**B.    Plaintiff's Public Accommodation Allegations Are Plausible.**

The ADA's Title III mandate specifically states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of* any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public

---

[1] 42 U.S.C. § 12188(a)(1), governing enforcement of Title III claims, provides that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

1  accommodation."   42 U.S.C. § 12182(a) (emphasis added); 28 C.F.R. § 36.201(a); *see*

2  *National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal.

3  2006) ("The statute applies to the *services of* a place of public accommodation, not services

4  in a place of public accommodation.  To limit the ADA to discrimination in the provision

5  of services occurring on the premises of a public accommodation would contradict the plain

6  language of the statute.") (emphasis added); *National Association of the Deaf v. Netflix,*

7  *Inc.*, 869 F. Supp. 2d 196, 201 (D. Mass. 2012) ("The ADA covers the services 'of' a public

8  accommodation, not services 'at' or 'in' a public accommodation."); *National Federation*

9  *of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567-76 (D. Vt. 2015

10      The Ninth Circuit in *Weyer* declined to explicitly hold that websites, alone, are places

11  of public accommodation.  However, the Ninth Circuit interpreted the ADA statute as

12  requiring "some connection between the good or service complained of and *an* actual

13  physical place is required."  *Id.* at 1114.

14      Here, Plaintiff alleges that Defendant's website is "integrated" with places of public

15  accommodation and functions as a gateway thereto.  (Cmpl. ¶ 7; *see also* ¶¶ 1, 5, 12, 13,

16  17, 28.)   Plaintiff additionally alleges by visiting fiatusa.com, users can gain specific

17  information about the locations where Defendant's products are sold, specifically and

18  exactly which of Defendant's products are at each location listed on Defendant's website,

19  pre-shop for the specific product they want such that the consumer may determine at which

20  location the product may be viewed and purchased, and schedule a test drive at specific

21  locations, all via Defendant's website.

22      The distinction Defendant draws between manufacturer vs. dealer/retailer is

23  insufficient to overcome the nexus pled by Plaintiff between the applicable website and the

24  places of public accommodation based on the Ninth Circuit's holding in *Weyer*.

25      The Ninth Circuit held in *Weyer* that "some connection between the good or service

26  complained of and <u>an</u> actual physical place is required."  *Id.* at 1114.  "[T]he legislative

27  history of the ADA makes clear that Congress intended the ADA to adapt to changes in

28  technology."  *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-01 (D.

1  Mass. 2012) (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("the Committee intends that
2  the types of accommodation and services provided to individuals with disabilities, under
3  all of the titles of this bill, should keep pace with the rapidly changing technology of the
4  times.").[2]

5       The cases upon which Defendant attempts to rely for its agency theory argument are
6  distinguishable and inapplicable in this instance.  For example, footnote 7 from *S. Bay*
7  *Creditors Tr. v. Gen. Motors Acceptance Corp.*, 69 Cal. App. 4th 1068, 1077 (Cal. App.
8  4th Dist. 1999) explicitly dealt with section 3000 *et seq.* of California's Vehicle Code and
9  its purpose of the 1973 amendment thereto "to assist independent new car and motorcycle
10 dealers by preventing 'undue control' by vehicle manufacturers. [Citation.]" (citing *Miller*
11 *v. Superior Court, supra,* 50 Cal.App.4th at p. 1668, fn. 2.).  That case had nothing to do
12 with the relationship between a disabled consumer being unable to fully and equally access
13 a manufacturer's products, much less the nexus requirements between places of public
14 accommodation and the services offered to gain access thereto.

15      Similarly, *George Williams et al. v. Yamaha Moto Corp., U.S.A.*, CV-1305066-
16 BRO-VBKX, 2015 WL 13626022, at *6 (C.D. Cal. Jan. 7, 2015) is likewise distinguishable
17 because there the "third-party beneficiary exception" to the privity requirement was at issue
18 regarding Yamaha products manufactured by the defendant but sold by its retailers.
19 Expectedly, the court concluded that "plaintiffs must do more than simply allege that they
20 are third-party beneficiaries. Rather, they must allege *facts* from which the Court could
21 conclude that they enjoy such status."  2015 WL 13626022, at *6.  Plaintiff's Complaint
22 takes no issue with the retailers of Defendant's products advertised on its website.  Plaintiff

23

24 [2] The DOJ's preamble to its 1991 Title III regulations stated that the regulations should be
25 interpreted to keep pace with "emerging technology."  56 Fed. Register 35544-01, 35566
   (July 26, 1991).  "New technology presents risks as well as opportunities; we must now
26 allow fear of the former to deprive us of the latter." *Baughman v. Walt Disney World Co.*,
27 685 F.3d 1131, 1137 (9th Cir. 2012) (reversing the district court's granting of the
   defendant's motion for summary judgment in an ADA case seeking the modification of a
28 policy prohibiting the use of a Segway at Disneyland).

1    makes no allegations about the accessibility at the dealers' physical locations. Plaintiff's
2    allegations are limited to Defendant's inaccessible website and the nexus to places of public
3    accommodation where Defendant's products are admittedly sold.

4          Likewise, *Acedo v. DMAX, Ltd.*, 2015 WL 12696176,*28 (C.D. Cal. 2015) is not
5    helpful to Defendant's position because the portion of the opinion upon which Defendant
6    relies related explicitly to the Michigan Motor Vehicle Service Repair Act, Mich. Comp.
7    Laws § 257.1307 where only "motor vehicle repair facilities" are subject and the defendant
8    manufacturer could not be subject thereto. This case is factually distinguishable because
9    Plaintiff is not attempting to apply the state-specific law at issue in *Acedo*, and likewise is
10    not relying on the agency theory presented therein. Rather, Plaintiff is attempting hold
11    Defendant accountable for its own allegedly inaccessible website.

12          Lastly, in *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJW(x),
13    2014 WL 5017843, *6 (C.D. Cal. Oct. 3, 2014) the court rejected the plaintiff's contention
14    "that an authorized dealer is an agent of BMW, and thus its statements can be attributed to
15    the manufacturer." Here Plaintiff makes no allegations against the dealership/retailers'
16    physical locations, or to any party other than Defendant. Indeed, as Plaintiff alleges in her
17    Complaint, Defendant is allegedly liable for its own allegedly inaccessible website.

18          The issue is not whether there is an agency relationship between Defendant and its
19    dealers. Plaintiff does not allege any necessary agency between the manufacturer and
20    retailer for the products sought. Instead, the issue raised by Plaintiff lies in Defendant's
21    allegedly inaccessible website and the alleged nexus between it and the places of public
22    accommodation where Defendant's products are sold. As such, Plaintiff has alleged a
23    plausible claim for relief at this stage.

24        **C.**    **Plaintiff Sufficiently Alleges An ADA Cause of Action and as Such, Does**
25               **Not Need To Plead Intentional Discrimination Under the Unruh Act.**

26          Plaintiff bases her cause of action for Defendant's violations of the Unruh Act upon
27    Defendant's alleged similar violation of the ADA: "Defendant is also violating the Unruh
28    Civil Rights Act, California Civil Code § 51 *et seq.* in that the conduct alleged herein

1  likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et*

2  *seq.*  Section 51(f) of the California Civil Code provides that a violation of the right of any

3  individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act."

4  (Cmpl. ¶ 45).

5      As the Ninth Circuit has held, if an Unruh Act claim is premised upon an ADA

6  violation, "no showing of intentional discrimination is required . . . ."  *Lentini v. California*

7  *Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).  "This result is mandated

8  by the plain meaning of the Unruh Act's language, which states that a violation of the ADA

9  is, *per se,* a violation of the Unruh Act."  *Id.* (referencing *Biehl v. C.I.R.,* 351 F.3d 982, 986

10  (9th Cir. 2003)).

11      Therefore, and because Plaintiff adequately pled her ADA cause of action, Plaintiff

12  need not allege intentional discrimination on the part of Defendant.

13      Based on the foregoing reasons, Defendant's Motion is denied.

15  Dated:

18                                    _____
                                     The Honorable John F. Walter
19                                    Judge for the District Court

[PROPOSED] STATEMENT OF DECISION

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2018, I electronically filed the foregoing **[PROPOSED] STATEMENT OF DECISION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell